MIDDLESEX WATER COMPANY, DEFENDANT IN ERROR, v. KNAPPMANN WHITING COMPANY, PLAINTIFF IN ERROR.

Argued December 6 and 7, 1899—Decided March 5, 19.0.

1. A company incorporated to supply water entered into a contract to furnish water to the owner of a factory, with a pressure sufficient for fire purposes. The factory was destroyed by fire by reason of the failure of the company to perform its agreement to furnish water with a pressure sufficient for fire purposes. *Held*, that the company is liable for the damages sustained thereby, although the failure to supply water was due to a break in its pipes without the company's fault.

2. The general rule of law applicable to such agreements is that where the contract is express to do a thing not unlawful, the contractor must perform it, and if by some unforeseen accident the performance is prevented, he must pay damages for not doing it. No distinction is made between accidents that could be foreseen when the contract was entered into and those that could not have been foreseen. Where, from the result of such an accident, one of two innocent persons must sustain a loss, the law leaves it where the agreement of the parties has put it. *Paradine* v. *Jane, Aleyn* 26, and *Trustees* v. *Bennett, 3 Dutcher.* 513, followed.

On error to the Supreme Court.

The Middlesex Water Company, the defendant in error, brought an action in the Supreme Court to recover the amount due for water supplied to the defendant, a manufacturing company whose factory and place of business were in the township of Woodbridge, and for furnishing and setting up a meter and connecting the defendant's premises with the

mains of the plaintiff, in pursuance of an agreement between the parties set out in the plaintiff's declaration and in the bill of particulars. The dispute in the case was not upon the claim of the plaintiff for the services set out in its bill of particulars. The controversy was, with respect to the defendant's claim for damages, sustained by reason of non-performance of the contract by the plaintiff. This claim was made by way of recoupment, pursuant to section 129 of the Practice act (*Gen. Stat., p.* 2555), as amended by the act of 1896 (*Pamph L., p.* 185).

The plaintiff was incorporated as a water company. The defendant sent to the company a proposition in writing as follows:

"*To the Middlesex Water Company:*

" In consideration of one dollar paid by you to the subscriber, the receipt whereof is hereby acknowledged, we do hereby agree that if you will, within the present year, eighteen hundred and ninety-seven, construct your water works in the township of Woodbridge, N. J., and lay a water main in the public highway adjoining or near our premises at Star Landing, so called, the point of delivery by the company to be near the branch of the Central R. R. of New Jersey, and our factory about fifteen hundred feet from the main twelve-inch line in the Woodbridge road, and furnish pure and wholesome water therein suitable for drinking purposes and other domestic uses, and suitable for use in steam boilers and with a pressure sufficient for fire purposes, we will take water from said main at said point for a supply to our factory and for fire purposes, for the period of five years from the date when you are ready to turn the water on, and pay for the same the sum of six hundred dollars ($600) per annum, in quarterly payments, on the second days of January, April, July and October, which shall entitle us to draw in each quarter an amount not exceeding at the rate of one million five hundred and fifty thousand gallons, and in case we take in any quarter more than said amount we are to pay

for such excess at the rate of one dollar per thousand cubic feet.

" The expense of connecting premises with the main and of setting and maintaining a meter to be paid by the consumer at cost, we to have the right at all reasonable times to inspect and read said meter with the agent of the water company.

" This agreement shall, at our option, be null and void unless the construction of the water works system is begun within four months from date and in good faith prosecuted to completion as above provided.

" Dated at New York, April 26th, 1897.

" KNAPPMANN WHITING Co.
" (Signed)     By CHARLES H. SMITH,
" *Treasurer*."

The statute in relation to recoupment provides that in all actions on contract the defendant may recoup all damages which he may have sustained by reason of any cause of action arising out of the contract set forth in the plaintiff's declaration as the foundation of the plaintiff's demand ;   *   *   * and if the defendant shall recoup damages, and the amount of such damages shall be found to exceed the demand of the plaintiff, judgment shall be given in favor of the defendant and against the plaintiff in such action for such excess, with costs.

The notice annexed to the plea sets out the defendant's cause of action by way of recoupment in substance as follows : That the defendant sustained damage by reason of the failure of the plaintiff to perform its agreement to supply the defendant with water with a pressure sufficient for fire purposes for use in the prevention and extinguishment of fires in its factory ; that on or about the 17th of May, 1898, the plaintiff, without any notice to the defendant and without any cause therefor given by the defendant, shut off the supply of water to the said factory ; that on the 18th day of May the defendant's factory caught fire, and by reason of the failure and

neglect of the plaintiff to perform its agreement to ·furnish and supply the defendant with water with sufficient pressure for fire purposes, the said factory and its contents were wholly destroyed by fire, causing loss and damage to the defendant to the extent of $20,000, concluding with averments in compliance with the statute concerning recoupment.

For the plaintiff in error, *Edward S. Savage.*

For the defendant in error, *Frank Bergen* and *Charles L. Corbin.*

The opinion of the court was delivered by

DEPUE, J.   The application in writing of the manufacturing company for water was accepted by the water company, and became a contract of the parties respectively.   The water company in its declaration sets out the contract as expressing the terms of its agreement, as well as the agreement on the part of the defendant.   The bill of particulars shows that the water company's claim against the defendant was founded on this agreement.   The water company in this suit sued for and recovered payments for water under the contract which became due July 1st, 1898 ($150), and October 1st, 1898 ($150), as the fire in question took place in May, 1898.   The litigation, therefore, must be decided upon the terms and legal effect of this paper as the agreement *inter partes.*

The facts briefly are these : The water company, having accepted the proposition of the defendant, connected defendant's works with its mains, in accordance with the contract, in November, 1897, purchased and set up a meter and began to supply the defendant with water.   The plant of the water company, with its pumping-station, is located at South Plainfield, and its principal main extends, in an easterly direction, from South Plainfield, through the villages of Metuchen, Woodbridge and Seawaren, to the village of Carteret, on Staten Island, a distance of about fifteen miles.   Between Woodbridge and Carteret the main crosses a stream in which

the tide ebbs and flows. The main at that point was laid at the bottom of the stream and was often submerged several feet below the tide. On the night of the 18th of May, 1898, a connection of the blow-off in the principal main of the water company gave way at a point where it crosses the stream, whereby water was discharged and the usual pressure was removed. The water company was notified of the absence of pressure, about eleven o'clock in the evening of the 18th, and immediately the superintendent and others set out to find the cause. It was a difficult leak to find, owing to the fact that the opening was under the waters of the creek. The men found it about four o'clock in the morning of the 19th. By that time the tide was so high that it was impossible to repair it, and it was necessary to wait until low tide, which occurred about noon of the 19th, and the superintendent began to open the gate, just west of the creek, at two o'clock, taking about twenty minutes to do so. On the day following the break in the pipe the defendant's factory caught fire, and, with its contents, was burned and destroyed, with a loss to the defendant of $16,889, after deducting insurance and salvage. No notice of the break in the pipe was given to the defendant. There is some conflict in the evidence as to whether the pressure was on the main at the defendant's works at the time the fire broke out. In view of the judge's instruction, it must be assumed that the pressure was not on, or that question must have gone to the jury. It must also, for the present purposes, be assumed that the burning of the building was the result proximately of the failure of plaintiff to furnish water with a pressure sufficient for fire purposes. If any question of the causal connection between the failure to supply water and the fire was involved, that also would have been a question for the jury.

As already observed, this contract was an agreement *inter partes.* Cases such as *Nickerson* v. *Bridgeport Hydraulic Co.,* 46 *Conn.* 24; *Beck* v. *Kittanning Water Co.,* 11 *Atl. Rep.* 300, and *Boston Safe Co.* v. *Salem Water Co.,* 94 *Fed. Rep.* 238, which hold that where the contract of the water

company is with the city no privity of contract exists between the water company and an inhabitant of the city whose property was destroyed by fire, to lay the foundation of an action against the company, do not apply to this case.

The water company, by this agreement, in express terms contracted with the defendant to furnish to it water suitable for drinking purposes and other domestic uses and for use in steam boilers, and with a pressure sufficient for fire purposes, the manufacturing company stipulating in the same connection that it would take water for a supply of its factory and for fire purposes for the period of five years and pay for it the stipulated price. The construction of the agreement is free from doubt. The premises to which the contract related were a factory with its contents. The enumeration in the contract of the purposes for which the water was contracted for comprehends the supply of water appropriate to and adequate for all the enumerated purposes.

The construction of this agreement by the learned judge at the trial presents the merits of this controversy. His instruction was as follows: " Under this agreement there is no express contract by the water company that it will furnish water uninterruptedly for five years to the defendant. There is no agreement that an unavoidable accident will not happen causing temporary stoppage of the water-supply, but the agreement on the part of the defendant to take water and pay for it imposed on the water company the duty of exercising reasonable care in the construction and maintenance of the water works in such a way as to give a proper supply of water to the defendant during the term of five years. If, therefore, the water company was guilty of any negligence in these respects it is liable for such damages as proximately resulted from such negligence." On this construction of the agreement the judge directed a verdict for the plaintiff. To this ruling the defendant excepted.

The agreement contained an express contract to furnish water for fire purposes without condition or qualification. The learned judge, by his construction, introduced into the

agreement a qualification that would exempt the water company from performing its agreement in cases where, without negligence on its part, the supply of water was cut off. To sustain this construction, counsel rely mainly on *Mill Dam Foundry Co.* v. *Hovey,* 21 *Pick.* 417. In that case the Mill Dam Foundry Company were proprietors of a foundry. They entered into an agreement with Hovey to manufacture iron, steel, &c., on hand. The foundry company, although they were lessees of the works under the Boston Water Power Company, were, as between the parties to the suit, under an obligation for the continuance of the water power. They made a contract with Hovey for the manufacture for them of certain iron, steel, &c., on hand into plate-iron for the market, the foundry company binding themselves to furnish all the iron, steel and other materials used in and about said manufacture. One of the mill-dams was broken by a high tide. At that time the defendant had on hand a large quantity of materials in different states of manufacture. The dam was repaired with due diligence and the waters restored. In a suit by the foundry company against the defendant for the non-performance of his agreement to manufacture, the defendant treated the covenant to repair as a condition which authorized him to repudiate the entire contract. The defence was disallowed. The case turned on the distinction between a condition and a covenant. The court held that if the breaking of the dam was not a substantial suspension and destruction of the water power for manufacturing purposes, but only a temporary diminution subjecting the defendant to some loss and inconvenience, it was not a breach of a condition precedent which would absolve him from further performance of his contract, although he might have remedy by an action for damages. The result in that case is analogous to the decisions of this court with respect to covenants which are not conditions precedent. *Blackburn* v. *Reilly,* 18 *Vroom* 290, 308 ; *Gerli* v. *Poidebard Silk Manufacturing Co.,* 28 *Id.* 432. The actual decision of the Massachusetts court is upon an issue not in this case, and the

principle adopted by the court, so far as it is applicable to this litigation, is adverse to the claim of the water company. Chief Justice Shaw, in delivering the opinion of the court, on page 441 of the reported case, says: "The distinction is now well settled between an obligation or duty imposed by law and that created by covenant or act of the party. When the law creates a duty, and the party is disabled from performing it without any default of his own, the law will excuse him, as in waste to a tenement, if the same be destroyed by tempest or enemies, the lessee is excused; but when the party by his own contract creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract. The good sense of the rule seems to be this, that in a case where, if an event happened, it must inevitably cause loss and damage to one or the other of the contracting parties, the party who has contracted that such an event shall not happen, although he cannot specifically perform that contract, because the event may happen through the act of God or inevitable necessity, yet he shall stand to that risk, and make good all the loss which shall occur in consequence of the happening of the event contemplated. The party thus contracting takes the consequences." The defence made in that case was overruled on the ground that the contract between the parties did not create a condition which would justify rescission—that the plaintiffs' remedy was in an action on the covenant for damages.

The portions of the Chief Justice's opinion which are pressed upon the consideration of this court are his observations with respect to the construction of such a contract when expressed in general terms, and implied qualifications and exceptions are obviously necessary to carry into effect the intentions of the parties collected from the whole contract— qualifications which are founded on the presumption that the parties who enter into a contract with reference to a business are presumed to understand how that business is usually carried on and to have reference to such known circumstances in

making their contracts. The illustrations given are contracts for the supply of water power, in which it must be presumed that the parties know that such power may and must necessarily be occasionally interrupted; that on a few very cold days in winter the ice will clog the wheel; that it may take several hours to clear it; that a freshet may carry away a gate, and that it will take a few days to replace it; that the covenants, though in general terms, are to be taken with these necessary and implied exceptions. These remarks apply to interruptions occasioning temporary inconveniences, where the damage is inconsiderable, and are limited to cases in which the contract is expressed in general terms.

These observations, of the Chief Justice, if they are not limited to the particular defence then before the court, as is made probable by his remarks on page 444, do not apply to the situation of the parties in this suit. The agreement between the parties is not expressed in general terms. The contract is specific and precise—to furnish "water with a pressure sufficient for fire purposes." The subject-matter of the contract concerned the supply of water for use for fire purposes. The parties, in making this agreement, contemplated the protection of the defendant's premises from a loss by fire, which might happen at any time and occasion not merely a temporary inconvenience, but an entire destruction of property. The covenant to pay rent, which at common law bound the tenant to pay, although the premises were destroyed by accident, is never more explicit than the plaintiff's agreement in this case. In *Chicago, Milwaukee and St. Paul Railway Co.* v. *Hoyt*, 149 *U. S.* 1, 12; 13 *Sup. Ct.* 779; 37 *Lawy. Ed.* 125, it was held that if a contracting party absolutely binds himself to perform things which subsequently become impossible of performance, or to pay damages for the non-performance thereof, and the thing which causes the impossibility might have been foreseen and guarded against in the contract or arose from the act or default of the promisor, he will be held to the strict performance of his contract. Where a contract is valid and is not performed or

excused, the obligation to pay damages arising from the non-performance is implied by law.   The general rule of law applicable to such agreements is that " where there is a positive contract to do a thing not in itself unlawful, the contractor must perform it or pay damages for not doing it, although, in consequence of unforeseen accidents, the performance of his contract has become unexpectedly burdensome or even impossible.  *Poll. Cont.* 362.   The exceptions to the generality of this rule of law are few and will be stated presently.

The leading case on that subject is *Paradine* v. *Jane,* *Aleyn* 26.   The decision in that case is stated in the opinion of Mr. Justice Whelpley in *School Trustees* v. *Bennett,* 3 *Dutcher* 513, with an extensive citation of cases to the same effect.   In his opinion the learned justice says: " No rule of law is more firmly established by a long train of decisions than this—that where a party, by his own contract, creates a duty or charge upon himself he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract; therefore, if a lessee covenant to repair a house, though it be burned by lightning or thrown down by enemies, yet he is bound to repair it.  *  *  *  No matter how harsh and apparently unjust in its operation the rule may occasionally be, it cannot be denied that it has its foundation in good sense and inflexible honesty.   He that agrees to do an act should do it unless absolutely impossible.   He should provide against contingencies in his contract.   Where one of two innocent persons must sustain a loss, the law casts it upon him who has agreed to sustain it, or, rather, the law leaves it where the agreement of the parties has put it.   The law will not insert, for the benefit of one of the parties, by construction, an exception which the parties have not, either by design or neglect, inserted in their engagement."   In that case it was decided, among other things, that the damage occasioned by the destruction of the building by a gale of wind must be borne by the contractor, who entered into a contract to build

and erect the building.    In a similar case (Dermott *v.* Jones),
Mr. Justice Swayne, in delivering the opinion of the court,
referred to School Trustees *v.* Bennett and other cases, and
said : "The principle which controlled the decision of the
cases referred to rests upon a solid foundation of reason and
justice.    It regards the sanctity of contracts.    It requires
parties to do what they have agreed to do.    If unexpected
impediments lie in the way and a loss must ensue, it leaves
the loss where the contract places it.    If the parties have
made no provision for a dispensation the law gives none.    It
does not allow a contract fairly made to be annulled, and it
does not permit to be interpolated what the parties them-
selves have not stipulated." 2 *Wall.* 1.    In *Jones* v. *United
States*, 96 *U. S.* 24, under an executory contract for the manu-
facture and delivery of goods at a specified time, it was held
that the failure to comply with the terms of the contract
with respect to the time of delivery was not excused by the
fact that the mill in which the cloths were manufactured was
destroyed by fire, and that, consequently, the party failed to
make deliveries of the cloths as the contract required.

In the English courts the rule laid down in Paradine *v.*
Jane has been adhered to with great tenacity.    In Atkinson
*v.* Ritchie the master agreed with the freighter that he would
proceed to St. Petersburg and there load for the freighter a
complete cargo, and deliver the same at London.    It was held
in that case that the master, after taking in at St. Petersburg
about half a cargo and sailing away upon a general rumor of
a hostile embargo being laid on British ships by the Russian
government, was liable in damages for the short delivery of
the cargo, though the jury found that he acted *bona fide* and
under reasonable and well-grounded apprehension at the time.
Chief Justice Lord Ellenborough, delivering the opinion of
the court, said : "No exception which is not contained in the
contract itself can be engrafted upon it by implication as an
excuse for its non-performance.    The rule laid down in the
case of Paradine *v.* Jane has often been recognized in courts
of law as a sound one—*i. e.*, that 'when the party by his

own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract.'" 10 *East* 530, 533.   The English and American cases are stated in 1 *Eng. Rul. Cas.* 338–351, and in 6 *Id.* 597–617; and also in 1 *Am. & Eng. Encycl. L.* (*2d ed.*) 588–590.

The principle underlying all these cases is that where the contract is express, as it is in this case—to furnish water with a pressure sufficient for fire purposes—to do a thing not unlawful, the contractor must perform it, and if, by some unforeseen accident, the performance is prevented, he must pay damages for not doing it.   No distinction is made between accidents that could be foreseen when the contract was entered into and those that could not have been foreseen.   Where, from the result of such an accident, one of two innocent persons must sustain a loss, the law, as was said by Mr. Justice Whelpley, casts it upon him who has agreed to sustain it, or, rather, leaves it where the agreement of the parties has put it, and will not insert for the benefit of one of the parties, by construction, an exception which the parties have, either by design or neglect, omitted to insert in their agreement.

To this general rule there are three exceptions.   I know of no other.   They are stated in the English notes (6 *Eng. Rul. Cas.* 611) as follows: " First, where the subsequent impossibility is imposed by law; secondly, where the continued existence of something essential to the performance is an implied condition of the contract; thirdly, in contracts for personal services, in which there is generally the implied condition that the person who is to render the service is alive and not incapacitated by illness.   The first of these exceptions exists where there is a declaration of war between two countries, of which the parties severally were inhabitants, which made the performance of the contract illegal. *Esposito* v. *Bowden,* 7 *El. & B.* 763 ; *Hillyard* v. *Mutual Benefit Life Insurance Co.,* 6 *Vroom* 415, 418, 422 ; *S. C.,* 8 *Id.* 444. The second exception is illustrated in the case of *Taylor* v.

*Caldwell*, 3 *Best & S.* 826 ; 6 *Eng. Rul. Cas.* 603.   The defendant in that case agreed to let certain gardens and a music hall to the plaintiffs, for four specified days to come, for the purpose of giving a series of concerts.   After the agreement was entered into, and before the day arrived for the first concert the music hall was accidentally destroyed by fire.   It was held that as the existence of the hall was necessary for the performance of the contract, the defendants were excused from liability in respect to its performance, and that no action would lie against them.   In that case the agreement was wholly executory, and the result is placed by Mr. Justice Blackburn on the principle that " where, from the nature of the contract, it appears that the parties must, from the beginning, have known that it could not be fulfilled unless, when the time for the fulfillment of the contract arrived, some particular, specified thing continued to exist, so that when entering into the contract they must have contemplated such continued existence as the foundation of what was to be done."   This doctrine was applied in the Supreme Court of New York to an executory contract for the sale and delivery of specified articles of personal property which were accidentally destroyed by fire before the time for delivery.   *Dexter* v. *Norton*, 47 *N. Y.* 62.   In a subsequent case in the same court, in an opinion delivered by the same judge, it was held that, under a contract to deliver a certain manufactured article within a specified time, the destruction by fire of the defendant's rolling mill, which prevented the defendant from completing its contract by the time fixed in the agreement, did not excuse the defendant's failure to perform the contract, even though the accident prevented performance.   *Booth* v. *Spuyten Duyvil Rolling Mill Co.*, 60 *Id.* 487.

The third class comprises contracts for purely personal services where the life or health of the contracting party is essential to the execution of the contract.   *Robinson* v. *Davison*, *L. R.*, 6 *Exch.* 269.   Cases in the first and third classes have no relevancy to this litigation.

Cases in the second class, of which Taylor v. Caldwell is

the leading case, were decided upon executory contracts and proceed on the ground that the existence of the subject-matter of the contract at the time of performance was a condition upon which the contract itself took effect.   In Taylor *v.* Caldwell the music hall was destroyed by a cause *ab extra* before the time for the performance of the contract, and performance having become impossible, the contract was entirely put at an end as to both parties.   In this case the interruption of the delivery of water by the breaking of the pipe was a temporary interference with the performance of the plaintiff's contract.   The failure to deliver water for the period required to repair the break did not justify either party in rescinding the contract as for a breach of condition. The case cited from the Massachusetts courts establishes that fact conclusively.   *Mill Dam Foundry Co.* v. *Hovey, supra.* The defendant's factory was, at the time of the breach of this contract, standing in a condition to receive and use water. Its destruction is alleged to have been due to the failure of the plaintiff to supply water.   It was not due to any antecedent cause *ab extra*, and the plaintiff cannot set up the destruction of the premises, imputable to its own breach of contract, to discharge it from the consequences of its failure to perform one of its terms.   If the plaintiff's water works had been accidentally destroyed, in an action by the defendant for not continuing to supply water under the contract, or in a suit against the defendant for the payments reserved for the use of water after the destruction of its factory, under the ruling in Taylor *v.* Caldwell, a different question might have arisen.   Decisions in this aspect cannot be permitted to have application to the circumstances of this case unless Paradine *v.* Jane, School Trustees *v.* Bennett and the long line of cases, English and American, holding the principles adjudged in those cases, are set aside.

Applying the rules of law adjudged in the cases, and especially in School Trustees *v.* Bennett, we have here this condition of affairs : The water company expressly contracted to supply water for fire purposes.   The company failed to do

so, and the premises of the defendant took fire, occasioning a considerable loss. Assuming that this result was due to the breaking of the pipes, without any fault on the part of the water company, we have a loss to be borne by one party or the other. In such a condition of affairs, to adopt the language of Mr. Justice Whelpley, " Where one of two innocent persons must sustain a loss, the law casts it upon him who has agreed to sustain it, or, rather, the law leaves it where the agreement of the parties has put it. * * * Between accidents by the fault of the contractor and those where he is without fault, they all rest upon the same principle—such *is* the agreement, clear and unqualified, and it *must* be performed, no matter what the cost, if performance be not absolutely impossible."

The construction by the trial court of the agreement was erroneous, and the judgment should be reversed.

*For affirmance*—None.

*For reversal*—The Chief Justice, Depue, Dixon, Garrison, Lippincott, Gummere, Ludlow, Collins, Bogert, Nixon, Hendrickson, Adams, Vredenburgh. 13.