## OBLIGATION TO MINE COAL NOT RELIEVED AGAINST BY BURNING OF THE APPLIANCES.

Court of Appeals for Mahoning County.

THE MORRIS COAL COMPANY v. JOHN A. THOMPSON ET AL.

Decided, December Term, 1913.

*Action to Recover Royalties on Unmined Coal—Work Stopped by Fire —Amount of Coal Remaining Not Sufficient to Warrant Expense of Replacements—Lessee Held for Royalties on Coal Remaining in the Ground.*

When a party by his own contract creates a duty or a charge upon himself, he is bound to make it good, if he may, notwithstanding any agreement by inevitable necessity, because he might have provided against it by his own contract. Hence, where a coal mining company, owning and operating in mining coal, divers and sundry structures, including shaft, tipple, scales, tracks, and all other necessary machinery and appliances on lands adjoining those of the lessor, enters into a contract of lease with the lessor whereby it purchases and agrees to mine all the minable coal underlying lessor's farm of 366 acres, and agrees to pay ten cents royalty for each 2,000 pounds, and after six months to pay said lessor an aggregate royalty of not less than $4,000 until all the said minable coal has been removed or paid for, and after 150 acres of said demised coal has been mined and paid for, the tipple and appliances by means of which said coal was mined and was intended to be mined were destroyed by fire without fault of said lessee, and it would be unprofitable for the said lessee to reconstruct the same for the purpose of mining the amount of coal remaining in said mine on said land, and said lessee had intended to mine said coal through said existing shaft and tipple and had not otherwise provided therefor.

*Held:* That there was no implied condition that the destruction of said tipple and appliances without fault of the lessee should relieve it from the obligations of said contract, but that it was still bound to mine the minable coal underlying said premises until the same was mined or removed or pay the premium royalty provided for in said lease.

*Tolles, Rosemond, Bell & Dugan,* for plaintiff in error.
*R. F. Scott,* contra.

STATEMENT.

Plaintiff in error seeks to reverse a judgment of the court of common pleas in favor of the defendants in error rendered on a lease for the sale of coal. The petition of the plaintiffs below sets up that on the 10th day of November, 1903, they leased, let and granted to the predecessors of the defendant below all the minable coal commonly known as No. 7 vein, four feet or over thick, underlying certain premises which are described as containing 336 acres more or less; that by the terms of the lease the lessee was to begin mining said coal within six months from the date of the same, and from thence forward to diligently prosecute the mining without discrimination or unfairness, until all the minable coal in said premises should be mined, and to pay for each two thousand pounds of coal the sum of ten cents. payable monthly; that after the expiration of said six months they should pay said lessors an aggregate royalty amounting to not less than four thousand dollars, and to continue to pay said royalties until all said coal had been removed or paid for; that the lessee continued to mine said coal until the 10th day of May, 1910, when they ceased and since which time they have refused to pay plaintiff any sum whatever, and they ask to recover such royalty at four thousand dollars per year.

A copy of the lease is attached to the petition containing several provisions not necessary to state except perhaps a provision that if the territory was exhausted to such an extent that forty thousand tons of coal could not be mined and removed in one year by reason of "horsebacks" or the thinness of coal, so that it would be impossible to produce forty thousand tons by diligent operation, the lessee should be charged royalty only upon the tonnage actually produced.

To this petition an amended answer is filed, setting up that at the time of making the agreement mentioned in the petition, the defendant owned and operated a coal mine known as King's mine; that it owned divers and sundry structures used in connection with the operation of said mine, including shaft, tipple, hoists, screens, scales, tracks and other machinery and appli-

ances; that this shaft and tipple and appliances were situated upon land adjoining the plaintiff's land mentioned in the petition and about one thousand feet distant from said lands; that these appliances had cost about forty-six thousand dollars, which was the reasonable value thereof; that after making said agreement the same was improved until plaintiff had invested in said shaft, tipple and equipment about sixty thousand dollars; that beginning at the time mentioned in said agreement and continuing diligently and continually thereafter until the destruction of said tipple and appliances, defendant did without discrimination or unfairness, mine and remove about one hundred and fifty acres of the coal demised by plaintiff, as aforesaid, being about four hundred and fifty thousand tons of lump coal; that in said agreement no surface was demised, let or granted to defendant, nor was any right or privilege to use plaintiff's land surface, or any part thereof; that the royalty paid, ten cents per ton of lump coal, was in excess of the rate theretofore paid for mining from said vein; that on the 7th day of February, 1910, without the fault of defendant and against its will, the whole of said plant above ground was destroyed by fire; that thenceforth it was impossible for the defendant to mine and produce the coal then remaining unmined in plaintiff's land; that the said property has not been replaced or restored; that because of said destruction and for no other reason, defendant quit said mine and since said time has not operated the same or any part thereof, and defendant at once removed its property from and surrendered possession of said premises to the plaintiff, and wholly abandoned the same; that the reasonable cost of replacing said destroyed plant, or of building the equivalent thereof would greatly exceed the reasonable and ordinary profit which could or would be made from mining and producing such minable and unmined coal as underlying plaintiff's said lands, and would exceed the total amount of royalty payable to plaintiff at the rate of four thousand dollars per annum during the term or years reasonably and ordinarily required for the mining of the minable coal demised as aforesaid by the plaintiff.

To this answer a demurrer was filed by the plaintiff which was sustained, and the defendant not desiring to plead further,

judgment was rendered on the pleadings in favor of plaintiff. The points claimed by the plaintiff in error in these pleadings, as stated by brief of counsel, are as follows:

1. Plant on outside built and in use before and when contract was made more than nine years ago.

2. More than 1,200 acres opened up by entries and underground working before contract made.

3. The plant destroyed was and has been the only existing plant or approaches whereby Thompsons' coal could be reached.

4. No surface right for a new mine opening or for erecting plant is given by the contract, and there is no mining plant anywhere on Thompsons' land. In other words, the plant can not be replaced there.

5. Plaintiff in error had explored this territory and all adjacent territory, before the fire, and had destroyed all the accessible coal.

6. What remained unmined, owned by Thompsons and others, is not sufficient to warrant restoration of plant.

7. The ten cent royalty was dictated because defendant in error intended, and plaintiff in error expected to and could reach Thompsons' coal without outlay for plant or entries; in other words, through the means at hand when the contract was made. In any other view it was excessive.

8. The allegation of impossibility as a fact.

9. The mutual intention to mine and produce Thompsons' coal through and by means of said plant and not otherwise.

10. That plaintiff in error has abandoned the coal granted and has not retained possession.


OPINION.

Norris, J.; Metcalfe, J., and Pollock, J., concur.

It is claimed by plaintiff in error that from the facts stated in the pleadings there was an implied condition that the coal in the land of the plaintiff below was to be mined through and by means of the shaft and tipple then in operation on the adjoining land theretofore constructed by defendant below, and that because of the destruction by fire of the tipple and appli-

ances without the fault of the coal company, it was no longer under obligations to carry out the agreement and mine the coal; that the parties when they made the contract had this situation in view, and that by reason thereof this implied condition arises, and that the performance of the contract on the part of the coal company, while not impossible, this implied condition relieves it from liability.

The substance of this answer is that it would be unprofitable for the coal company to reconstruct the tipple and appliances destroyed by fire to remove the small amount of coal still remaining in the land of the plaintiff below.

There are numerous authorities holding that where the subject-matter of the contract is destroyed without fault of the parties so that the contract is impossible of performance, there is an implied condition that the parties are relieved from carrying out the contract. The earliest case that we have found where the question is discussed is perhaps *Paradine* v. *Jane*, 1 Alleyn Reports, 26, and also reported in 82 English Reports Reprint, page 897, a very early English case, but the rule stated is reaffirmed in the case of *Atkinson* v. *Ritchie*, 10 East, 533, reported in Vol. 133, English Reports Reprint, 877, and the rule as stated by Lord Ellenborough is as follows:

"When a party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract."

That rule is followed in numerous English cases, among others, *Sheffield Water Works Company* v. *Carter*, 82 B. D., 645, and in this country there are many cases discussing the rule. In *Krause* v. *Board of Trustees*, 70 N. E., 264, the Supreme Court of Indiana review the authorities at length. That was a case where a contractor agreed to construct an annex to a building and before the completion of his contract the building itself was destroyed by fire caused by lightning, and the Supreme Court of Indiana held that he was not liable for failure to perform his contract, and they announce this principle in the opinion of the court:

"As to a general convenant, it is the law that the destruction of the subject matter of the contract, thereby creating a physical or natural impossibility inherent in the nature of the thing to be performed, whether occasioned by *vis major* or otherwise, will discharge the covenant, provided the event occurred without fault of the covenantor.''

And they cite numerous authorities in support of that principle and among others, the case of *Butterfield* v. *Byron*, 27 N. E., 667 (12 L. R. A., 571; 25 Am. State Rep., 654), and the Supreme Court cites with approval the principle we have quoted above from *Paradine* v. *Jane*. Another leading case is *Middlesex Water Company* v. *Knappman Whiting Company*, 81 Am. State Rep., 467, decided by the Supreme Court of New Jersey, and quoting from the syllabus:

"Where there is a positive contract to do a thing not in itself unlawful, the contractor must perform it, and if, by unforeseen accident the performance is prevented, he must pay damages for not doing it, no distinction being made between accidents that could be foreseen when the contract was entered into, and those that could not have been foreseen.

"The performance of an express contract is excused where the continued existence of something essential to the performance is an implied condition in the contract.''

The learned court in its opinion again refers to the case of *Paradine* v. *Jane, supra,* as the "leading case on the subject,'' and cite the opinion of the Supreme Court of New Jersey in the case of *Superintendent* v. *Bennett,* 27 New Jersey Laws, 513 (72 Am. Dec., 373), as follows:

"No rule of law is more firmly established by a long chain of decisions than this—that where a party by his own contract, creates a duty or charge upon himself he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract; therefore if a lessee covenant to repair a house, though it be burned by lightning or thrown down by enemies, yet he is bound to repair it. * * * No matter how harsh and apparently unjust in its operation the rule may occasionally be, it can not be denied that it has its foundation in good sense and inflexible honesty. He that agrees to do an act should do it

unless absolutely impossible. He should provide against contingencies in his contract. Where one of two innocent persons must sustain a loss, the law casts it upon him who has agreed to sustain it, or, rather, the law leaves it where the agreement of the parties has put it. The law will not insert, for the benefit of one of the parties, by construction, an exception, which the parties have not, either by design or neglect, inserted in their engagement."

The learned judge refers to the opinion in *Paradine* v. *Jane, supra,* and says that the rule in this case has been adhered to with great tenacity. See also *Bacon* v. *Cobb,* 45 Ill., 47. The case of *Dermott* v. *Jones,* 2 Wall., 1, is also cited. In the opinion in that case Mr. Justice Swayne says:

"It is a well settled rule of law, that if a party by his contract charge himself with an obligation possible to be performed, he must make it good unless its performance is rendered impossible by the act of God, the law, or the other party. Unforeseen difficulties, however great, will not excuse him."

To the general rule, it is stated, there are three exceptions, as follows:

1. Where the subsequent impossibility is imposed by law.

2. Where the continued existence of something essential to the performance is an implied condition of the contract.

3. In contracts for personal services, in which there is generally the implied condition that the person who is to render the service is alive and not incapacitated by illness.

The only exception that could possibly apply here is probably the second, as to where the continued existence of something essential is an implied condition to the contract. It is stated that that is illustrated in the case of *Taylor* v. *Caldwell,* 3 Best & S., 826 (6 Eng. R. C., 603). The defendant in that case agreed to let certain gardens and a music hall to the plaintiffs for four specified days to come for the purpose of giving a series of concerts. After the agreement was entered into and before the day arrived for the first concert, the music hall was accidentally destroyed by fire. It was held that as the existence of the hall was necessary for the performance of the contract, the defend-

ants were excused from liability in respect to its performance, and that no action would lie against them.

We think there is a clear distinction between that class of cases and the one at bar. The coal mine itself was not destroyed. The only destruction was of the tipple and appliances by which the coal had therefore been mined, which rendered the further mining of the coal much more expensive. *Dexter* v. *Norton*, 47 N. Y., 62 (7 Am. Rep., 415), cited by counsel for plaintiff in error in this case is referred to in the learned opinion as to the third class of exceptions above referred to, but it was held in a subsequent case in the same court in an opinion delivered by the same judge that under contract within a specified time, the destruction by fire of the plaintiff's rolling mill, which prevented the defendant from completing its contract by the time fixed in the agreement, did not excuse even though the accident prevented the performance. *Booth* v. *Rolling Mill Co.*, 60 N. Y., 487.

We find no case that we think conflicts with the principle announced by the authorities cited, but we think whatever may be the law elsewhere, it has been settled by our own Supreme Court against the contention of the plaintiff in error. In the case of *Board of Education* v. *Townsend*, 63 Ohio St., 514, it is stated in the syllabus:

"Inevitable accident will not excuse the performance of a contract where its essential purposes are still capable of substantial accomplishment, though literal performance has become physically impossible.

"When a party has one or the other of two modes of performing a contract, and one of them becomes impossible by the act of God, he is bound to perform it in the other mode."

It does not appear in this case in the pleadings that literal performance of the contract was impossible. The only claim on the part of the plaintiff in error is that it would 'be very expensive, and that the coal remaining in these lands could not be mined with profit in view of the expense of reconstructing the tipple. We know of no authority, and none has been cited to us, that relieves a party from the obligations of a contract because of an inevitable accident which makes the performance of

a contract unprofitable.   If such a rule were to be adopted where would it end?   The coal company in this case had a tipple on adjoining lands in such proximity to the coal of the plaintiff below that it could profitably mine the coal and pay a greater royalty than it otherwise could have profitably paid.   Now, its appliances have been destroyed without its fault and the continued mining of Thompson's coal has been rendered uprofitable May it thereby be relieved from the obligations of its contract? Is there an implied condition in all contracts that the things existing at the time the contract is made, and that the means by which the contract is to be performed shall continue until the performance of the contract?   A homely illustration might be suggested that a party had agreed to haul this coal to market; that he had for that purpose a team of horses and a wagon, and, that before the complete performance of the contract without his fault these means are destroyed, and to get another team and wagon for the purpose of hauling the balance of the coal to market would make it unprofitable.   Is he still liable on the contract?   We think all the authorities say that the liability still exists.   *Coal Co.* v. *Coal Co.*, 86 Ohio St., 140, is a much stronger case for relief from liability than the one made by the plaintiff in error, but the Supreme Court in an exhaustive opinion holds that the lessee is not relieved from liability under the contract of lease.

We have examined all the authorities cited by plaintiff in error and have found none that we think conflict with the rules we have here announced.   It follows that the judgment of the court of common pleas will be affirmed.