ISAAC A. HALL, PLAINTIFF IN ERROR, v. PASSAIC WATER COMPANY, DEFENDANT IN ERROR.

Submitted July 8, 1912—Decided November 18, 1912.

1. A corporation is not bound by the agreement of a superintendent which is not shown to be within the scope of his express or implied authority, which is not in the course of the ordinary business of the company and which it has not ratified, acquiesced in or knowingly profited by.

2. One who seeks to charge another with the act of an agent must prove that the agent acted within the scope of his authority, actual or apparent, or ratification of, acquiescence in or acceptance of the benefit of the act on the part of the employer.

3. A superintendent of a water company had made arrangements with a number of persons for the supply of water to the buildings owned by them for ordinary household and mill purposes at the regular scheduled rates. The proof showed that no water was supplied to anyone for fire purposes except at special rates. The plaintiff claimed he had made a contract with the superintendent for a supply of water at a certain pressure for fire purposes, but at the regular scheduled rate charged to persons who did not have a contract for fire purposes, and plaintiff never paid the defendant any other rate. Plaintiff's mill having burned down through the alleged failure of the water-supply he sought to hold the defendant liable for his loss. It was not shown that the

superintendent·had ever made any similar contract with anyone, that he had never been authorized to make such a contract, that the other officers and directors never knew of it, and the company's books contained neither that nor any other contract of a similar character.   *Held*, that the defendant was not liable thereon.

4.  A water company which has a contract with a city for a supply of water is not liable upon such contract to an inhabitant for loss which he sustains through the failure to supply sufficient water to extinguish a fire in a building owned by such inhabitant.

On error to the Supreme Court.

For the plaintiff in error, *John W. Harding* and *James G. Blauvelt.*

For the defendant in error, *William H. Corbin* and *Michael Dunn.*

The opinion of the court was delivered by

TREACY, J.   The defendant is a corporation of this state, engaged in the supplying of water to the city of Paterson, and to the inhabitants thereof.   The plaintiff is an inhabitant of the city of Paterson and was the owner of a factory building on Fulton street, in that city.   He erected in said building two standpipes which ran from the top floor through the other floors to the ground and connected with the pipes of the defendant.   There were in the mill also other water pipes which supplied water for the ordinary uses connected with the business.   The plaintiff complained that the defendant agreed, in consideration of the payment for water at a stipulated price by plaintiff, to deliver a supply of water to plaintiff's mill, under a pressure of not less than ten pounds to the square inch at each opening of the standpipes and the other water pipes; that a building across the street from plaintiff's mill took fire; that the flames spread to the plaintiff's mill and through the failure of the defendant to keep the water at the pressure stated, the mill and its contents were destroyed.   The defendant pleaded the general issue and the statute of limitations.   The trial court directed a verdict for the defendant.

The plaintiff assigns error on this, and while he has other assignments of error, this is the only one which he argues.

If the defendant made the contract alleged in the declaration, it would of course be bound to keep the supply of water in the plaintiff's mill at the stipulated pressure, notwithstanding that an unforeseen accident made it impossible to do so. *Middlesex Water Co.* v. *Knappmann-Whiting Co.*, 35 *Vroom* 240.

To prove his case the plaintiff testified that when he determined to build his mill he saw William Ryle, the superintendent of the defendant, informed him of his plans and asked him if he would have sufficient water pressure for fire purposes, and that Ryle told him he could go ahead with his building and that he would have sufficient supply for fire and other purposes. He testifies: "I then asked him (Ryle) what that pressure would be, or was; he said the pressure was not less than ten pounds, but he said, 'Mr. Hall, you will have more throughout your mill.' I then asked him what the charge would be for such service. He said the charge would be as charged to manufacturers for what they used and as used." To establish Ryle's authority to make such a contract the plaintiff called as witnesses several property owners in Paterson who testified that they had made arrangements for the supply of water to their premises by defendant with Ryle. But none of these witnesses proved that he or any other person had any agreement or arrangement similar to that claimed by the plaintiff. None of them had a contract guaranteeing a ten-pound pressure of water, or any other pressure, and the only witness (Ryle) besides the plaintiff who claims to have spoken to Ryle about a supply to a standpipe in his mill says that all Ryle agreed to give was the best pressure that he could. "There was no reference as to the amount of pressure," he says, "but Mr. Ryle volunteered to make connection with the Essex street main, that was the pressure, the best he could do for that purpose." The testimony of these witnesses was altogether inadequate to establish knowledge on the part of the defendant of the making of the contract sued upon or to make out a course of conduct on the part of Ryle in the

making of contracts of the character of that claimed by the plaintiff which would raise a presumption that the defendant authorized expressly or by acquiescence the making of such contract. The case of *Middlesex Water Co.* v. *Knappmann-Whiting Co., supra,* does not apply. In that case there was a written contract to supply water sufficient for fire purposes. The water main broke and the Knappmann-Whiting Company's mill took fire, and, owing to lack of water-supply, was burned. The water company was properly held liable in that case. In that case the contract was admittedly and undeniably the contract of the water company to supply water for the extinguishing of fires. The water company brought suit upon the contract for money due to it for water supplied to the Knappmann-Whiting Company, and the latter set up in recoupment the damages suffered by it through the destruction of its mill. The water company in defending against this claim contended that an unforeseen accident, the breaking of the main, prevented its compliance with its contract and excused it. No question arose as to the authority of an agent to make the contract. The question involved in the case *sub judice* is whether the defendant's superintendent had authority to make the contract sued upon, namely, to guarantee a sufficient amount of water under all circumstances under a ten-pound pressure to the square inch to extinguish fires.

There is no evidence in the case of the existence of such authority. So far as appears from the testimony no one else ever had a contract guaranteeing a certain pressure at all times and under all circumstances. The testimony of the witnesses who said they had arranged with Ryle on different occasions for a supply of water for general mill and tenement-house purposes may have been sufficient to establish the fact that he had authority to make such contracts. It certainly did not prove an authority in him to make what would seem from the evidence to have been an extraordinary contract. The testimony of the witnesses for the defence, Gardner, the managing director, and Bell and John C. Ryle, two of the active directors of the defendant, negatived the existence of such authority.

While the defendant evidently supplied water to some property owners for fire purposes, these cases were entered in their books for "fire purposes only," and these customers paid a fixed charge for that purpose, whether the water was used or not. Of course, this arrangement was entirely different from the one which the plaintiff claims to have made, which was the supplying of water for fire and other purposes, to be paid for on the basis of what "was used and as used," and the bills rendered to and paid by the plaintiff showed that he paid only the same rates as ordinary consumers who did not have any agreement with the water company for fire purposes. The defendant did not deny that Ryle had authority to make ordinary contracts for the supply of water to users for general purposes. But it did deny, and prove by its directors, that he had not authority to make the unusual contract set out by the plaintiff, to guarantee a supply for fire purposes at a certain pressure at all times and under all conditions and upon the terms claimed by the plaintiff. And it supplemented this proof by its contract book which did not contain any other contract of the kind. There was no evidence on the part of the plaintiff tending to disprove the testimony of the defendant on this point. The facts therefore as to the authority or lack of authority of the agent on the crucial question were undisputed, and the question as to his authority was one of law for the court and the direction of a verdict was not erroneous. *Gulick* v. *Grove*, 4 *Vroom* 463; *Belcher* v. *Manchester Building and Loan Association*, 45 *Id.* 833, 839.

In *Thomson* v. *Central Passenger Railway Co.*, 51 *Vroom* 328, it was held that a corporation is not bound by an unauthorized agreement made by its president, outside of the scope of his express or implied authority and not in the course of its ordinary business, which it, through its directors, has neither ratified, acquiesced in or knowingly profited by.

Not only does the burden of proof as to the fact of agency rest with one who seeks to charge another as principal with the acts of an alleged agent, but the burden also rests with him to prove the extent of the agency; in other words, the burden is upon him to show that the act or acts of the agent

were within the scope of his authority. 31 *Cyc.* 1644, and cases therein cited.

Whenever it is out of the usual course of an agent's business to make a guaranty, the party seeking to hold his principal liable thereon has the burden of showing the agent's authority to make the guaranty or that the principal subsequently ratified his act. 31 *Cyc.* 1647; citing *Willard* v. *Mellor,* 19 *Colo.* 534; *Gray* v. *Gillilan,* 15 *Ill.* 453.

The case of *Murphy* v. *W. H. & F. W. Cane, Inc.,* 53 *Vroom* 557, is not on a parallel with the present one. In that case the president of a corporation which never held any meetings of its directors and which allowed him to make all its contracts, and always accepted the benefit of them, made one of the usual contracts in the name of the corporation with the plaintiff, and it was held that the corporation was bound by it.

The plaintiff further claims that he is entitled to the benefit of the contract made by the city of Paterson with the defendant for the supply of water to the city for fire hydrants and other purposes and which provided for a ten-pound pressure to the square inch. It has been frequently held that a party contracting with a city is not liable to an inhabitant of the city on such contract for loss which he sustains through the failure to properly perform the same. *Styles* v. *Long,* 38 *Vroom* 416, and 41 *Id.* 301; *Davis* v. *Clinton Water Works,* 54 *Iowa* 59; *Beck* v. *Kittanning Water Co.* (*Pa.*), 11 *Atl. Rep.* 300; *Nickerson* v. *Bridgeport Hydraulic Co.,* 46 *Conn.* 24.

The other assignments of error, not having been argued in the brief of the plaintiff in error, will not be considered.

The judgment should be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, BERGEN, VOORHEES, VREDENBURGH, TREACY, JJ. 8.

*For reversal*—TRENCHARD, MINTURN, KALISCH, BOGERT, CONGDON, WHITE, JJ. 6.