DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

MARCH TERM, 1913.

---

MICHAEL BAUM, PLAINTIFF, APPELLANT, v. SOMERVILLE WATER COMPANY, DEFENDANT, RESPONDENT.

Argued March 20, 1913—Decided June 18, 1913.

A public water company is not liable to an individual for loss by fire resulting from an insufficient supply of water at insufficient pressure at fire hydrants to extinguish a fire, unless there be a contract between the parties for a sufficient supply at sufficient pressure.

---

On appeal from the Supreme Court.

For the appellant, *Condict, Condict & Boardman* and *James L. Griggs.*

For the respondent, *Clarence E. Case.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. On the afternoon of July 8th, 1909, plaintiff's stove factory and warehouse at Somerville

were destroyed by fire. Within the door of the warehouse plaintiff had a coil of fire hose, equipped with nozzle and coupling. Directly in front of the door was a fire hydrant owned by the defendant company; also a similar hydrant on the plaintiff's grounds, with hose attached. Rising from the roof of the iron works was a stand pipe, which was equipped with a fire hose. At the time of the fire, the hose from the hydrants and stand pipe was used and directed toward the fire, but the streams were inadequate, and none of them reached the fire. The department sent the hose company and the engine company, but they were unable to put out the fire for lack of sufficient water at sufficient pressure.

The defendant company was incorporated for the purpose of supplying the towns of Somerville and Raritan with water. It had assumed, plaintiff contends, the duty of using reasonable care that there should be a constant supply of water at the fire hydants, under reasonable pressure for fire purposes, and the action was brought to recover his loss resulting, as he alleges, from failure on the part of the defendant to supply sufficient water at sufficient pressure to extinguish the fire.

The questions involved in this appeal arise out of the admission and rejection of evidence and the charge to the jury; and, as stated by plaintiff's counsel, the serious question involved arose out of the very nature and theory of the action, for although the court may have erred in the admission and exclusion of evidence and in the charge to the jury, yet, if the cause of action does not rest upon sound principles, such errors are harmless.

We think that the question as to whether or not there is in law any liability of the defendant to the plaintiff is of the very essence of the action and is dispositive of the case.

There is disclosed no contractual relation between the plaintiff and defendant, and therein this cause differs from *Middlesex Water Co.* v. *Knappman-Whiting Co.,* 35 *Vroom* 240, where a company incorporated to supply water entered into a *contract* to furnish water to the *owner of a factory with pressure sufficient for fire purposes,* which factory was destroyed by fire by reason of the failure of the company to

perform its agreement, and it was held that the company was liable for the damages sustained. The case at bar is more like the recent one in this court of *Hall* v. *Passaic Water Co.*, 54 *Vroom* 771. In that case a water company was sought to be held liable for damages resulting to a mill through fire, under a contract alleged to have been made between the owner of the factory and the superintendent of the water company for a supply of water of a certain pressure at the various openings of stand pipes and water pipes in the factory. The testimony failed to establish the making of the contract sued on, and the court held that the defendant company was not liable.

The gravamen of plaintiff's case here, as stated by himself, is, that had there been a reasonable supply of water at the stand pipe and hydrants in and about his factory at the time of the fire, it would have been extinguished without loss. His position is that a duty was owed to the public to supply sufficient water of sufficient pressure to extinguish fires. To support this position he cites, among other cases, *Olmstead* v. *Proprietors of Morris Aqueduct,* 18 *Vroom* 311, in which the proprietors of the Morris aqueduct sought to condemn lands and divert streams of water to such extent as was necessary to carry out the purposes of the corporation, and the language of the Supreme Court to the effect that it is well known that when a company undertakes to supply a town with water the original methods to obtain water to extinguish fires are abandoned by the people, and that under such circumstances it would be gross negligence in the company to permit the supply of water to be intermitted or diminished to any considerable extent and thus endanger the property within the town, was employed in combating the plaintiff's contention that the defendant could not exercise the power of eminent domain further than to supply Morristown with water when in fact the company had extended its pipes and was supplying persons living outside of Morristown. Also, *Long Branch Commission* v. *Tintern Manor Water Co.,* 4 *Robb.* 71, a case of contention between the municipality and the water company concerning rates to be charged by the company to the

municipality and private consumers for the use of water, where the matters submitted for adjudication were, what compensation ought. the defendant to have for supplying water to the inhabitants of the territory governed by the commission, how should that compensation be distributed between the municipality and the private consumers, and how between the private consumers themselves. Although there was language used by the learned Vice Chancellor who wrote the opinion to the effect that a company which seeks and obtains a franchise to supply a certain territory with water for public and domestic uses is under obligation to furnish a supply which shall be equal to all emergencies which may be reasonably anticipated, including unusual droughts and unusual conflagrations, and to bear constantly in mind the prospective increase in population and a constant increase in demand for water, this observation was made with reference to the necessity of the company increasing its supply of water because of an increased consumption of it incident to increased population in the territory, and is no authority for the proposition that a water company is responsible to an individual property owner for damages suffered by him through fire in the absence of contractual relation between the two with reference to a supply of water for fire extinguishing purposes.

It will be observed that the language used by the judges in Olmstead *v.* Proprietors of Morris Aqueduct and Long Branch Commission *v.* Tintern Manor Water Co. was not spoken with reference to the liability of those companies with reference to an inadequate supply of water, or lack of supply at a certain pressure, but with reference to their duty generally of acquiring the sources of supply and providing for an adequate supply, duties of a public character, the performance of which, by the public, in appropriate proceedings, could doubtless be compelled.

The case in hand, then, narrows itself to the question of duty or no duty owed by the defendant to the plaintiff at the time of the fire. As we have already seen, if there had been a contract between the parties, as in Middlesex Water Co. *v.* Knappman-Whiting Co., there would doubtless have been lia-

bility on the part of the defendant company, and that even though an inadequate supply of water at the fire was the result of some accidental cause at the time unknown to the water company, upon the principle that where damages under such circumstances result, the one of two persons who must bear the loss shall be he who has agreed to sustain it. But in the absence of contract no liability exists on the part of the defendant for the benefit of the plaintiff. The common law does not impose such a liability and we have not been pointed to any statute which creates it. In the absence of contract it does not exist.

This case was submitted to the jury under instructions which contained no error prejudicial to the plaintiff. The jury found for the defendant, and the judgment, based upon that finding, must be sustained.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, TERHUNE, HEPPENHEIMER, JJ. 15.

*For reversal*—None.