ATLAS FINISHING COMPANY, A CORPORATION, PLAIN-
TIFF, v. HACKENSACK WATER COMPANY, A CORPO-
RATION, DEFENDANT.

Decided November 10, 1932.

For the plaintiff, *J. Emil Walscheid*.

For the defendant, *Edwards & Smith*.

ACKERSON, S. C. C. The complaint in this action is in
three counts and the answer reserves the right to object, on
or before the trial, that each of said counts fails to set forth
a cause of action.

The matter now comes before me upon a motion pursuant
to rule 40 of this court to determine the questions thus raised
before the trial. The plaintiff in its brief expressly abandons
the second and third counts, so they will be stricken out.

The first count alleges in substance that on June 23d,
1921, the defendant was a "public utility," as defined in "An
act concerning public utilities, to create a board of public
utility commissioners and to prescribe its duties and powers,"
approved April 21st, 1911 (*Pamph. L.* 1911, *p.* 374); that
at said time the defendant maintained and operated a water
system or plant within the township of North Bergen in the
county of Hudson, in this state, and the plaintiff owned and
operated a manufacturing plant in said township and had
upon the premises and in the buildings thereon a system of
water pipes connected with and leading from the pipe lines
of the defendant, to said buildings, with outlets therefrom

for the purpose of discharging water, and also had upon said premises both in and out of said buildings numerous fire hydrants connected by means of pipes to and with the said pipe lines of the defendant, together with fire hose and hose wagons, chemical fire extinguishers, a fire alarm system and a crew of employes trained to fight any fire which might accidently arise upon said premises. The complaint further alleges that:

"On June 23d, 1921, and for a long time prior thereto, defendant had undertaken to and did serve plaintiff with a supply of water from its said system or plant through its said pipe lines, at or upon the premises of the plaintiff aforesaid, for the purpose of enabling plaintiff by means of the pipe lines, fire hydrants, fire hose and hose wagons maintained by the plaintiff upon the said premises aforesaid to combat any fire which might accidentally originate upon the premises aforesaid, whereby it became and was the duty of defendant at all times to furnish water to plaintiff for the purpose aforesaid in sufficient quantity and under sufficient pressure to make such service safe, proper and adequate for the purpose of combating any fire which might thus arise upon said premises."

It is further alleged that on said date a fire started accidentally upon said premises which the plaintiff endeavored to combat, but that defendant, at the time and place aforesaid, "neglected and failed to furnish the water by it undertaken to be furnished as aforesaid, and wholly neglected and failed to supply plaintiff with water in quantity and under sufficient pressure to make such service safe, proper and adequate for the purpose of combating said fire," by reason of which failure the fire could not be extinguished, and it became uncontrollable and totally destroyed the buildings and other property of the plaintiff, wherefore the plaintiff seeks damages.

The plaintiff insists that this count of the complaint sounds in tort, and is intended to be an action *ex delicto,* and seeks to uphold the legal sufficiency of the pleading upon one or more of three theories. First, it is urged that the count is based upon a duty of the defendant to the plaintiff resulting

from a contract entered into directly between the parties, thus excluding from consideration the usual situation where a water consumer has endeavored to impose liability upon a water company under a contract for a water supply made by such company with a municipality. The second theory upon which this count is sought to be upheld is, that even though there is no contract between the parties, nevertheless, the defendant having "undertaken," even though gratuitously, to furnish water to the plaintiff, it is liable to the plaintiff for the breach of a common law duty to use reasonable care in its undertaking. The third theory is the alleged breach of a statutory duty.

Taking up the plaintiff's first theory, it is obvious, since the tort is claimed to arise out of the breach of a contractual duty, that if the complaint does not sufficiently state a contract giving rise to the duty for the breach of which liability is claimed, the pleading must prove insufficient for that purpose.

It is apparent as conceded by the plaintiff, that the pleading does not set forth an express contract between the parties. Reliance is placed upon an implied contract, but it is doubtful if sufficient mutuality of obligation is shown even for that purpose. *Scott* v. *Eldridge, 2 N. J. L.* 156. In any event the most that can be claimed for the pleading is that it states the implied engagement ordinarily arising from the relationship existing between a public service corporation and a private consumer of water. There is no allegation that the defendant agreed for a valuable consideration to supply water to the plaintiff in any quantity or at any pressure for protection against fire. Can such an engagement arise by implication? I think not.

The primary business of a water company, so far as private customers are concerned, is to furnish water as a commodity. Keeping this in mind, and further recognizing that under the law of this state the defendant is a *quasi*-public corporation engaged in the exercise of a public use in discharging a public duty which would otherwise devolve upon the municipality itself, and furnishing water at rates fixed exclusively by a state agency, it would appear plain that it was never

contemplated that from the simple relation of distributor and consumer, the former undertook to assume liability for failure to furnish water to extinguish fires. In the nature of things the compensation fixed by the supervising state agency has no relation to the assumption of any such liability; that compensation is based on the expense of furnishing water simply as a commodity; liability for the destruction of premises by fire, to which the company may be required to supply water was not taken into consideration in fixing the rates, nor, I suppose, was it even thought that any such liability could be imposed by the rate-making body or was to be assumed by the company in doing so. This is apparent on reflection. As already said, the defendant is a public service corporation, according to the pleading in question, therefore, under a duty enjoined by law, and was obligated to make connection with the premises and furnish water to any of the inhabitants of the municipality who desired it. No one person had a right superior to another to demand that he should be supplied, and the legal duty is imposed upon the company to furnish it equally to the extent that its system was capable of doing it. The plaintiff had a right to install fire hydrants, as had any other member of the municipality, and to require the water company to connect its mains with the service pipes supplying such hydrants, and for this service the company could only require payment of the uniform water rates and hydrant charges fixed by the state agency. That no liability for failure to furnish fire protection could have been contemplated from such a situation is obvious. It is even more apparent when we consider the enormous liability which the water company would be compelled to assume, under plaintiff's theory of implied obligation, without any adequate, and it may be said, any consideration at all, commensurate with the hazard involved. Under the requirements of the "Public Utility act," *supra,* the defendant water company was required to supply water to all indiscriminately within the field of its operations, and at uniform rates presumably based upon water supplied as a commodity or as merchandise. Therefore, the defendant would be obliged to supply water to premises involving all degrees of fire hazard

at the same uniform rates, thus assuming liability, practically as an insurer, for millions of dollars worth of property, upon which, either from the nature of the business or the locality in which the property is situated, no insurance company would think of assuming the risk—and all of this by implication only.

While a water company may expressly contract to furnish water to a consumer in sufficient quantity and at sufficient pressure to extinguish fires, nevertheless, sufficient has been said to demonstrate that such an obligation is not implied from the relationship of water supply company and customer merely, and can only exist where, in addition to the ordinary duty of supplying water for general use, the company by express contract assumes the additional obligation of furnishing it in sufficient quantity to protect specific property from fire. Such liability can only arise out of an express contract. It does not arise by implication. *Baum* v. *Somerville Water Co.,* 84 *N. J. L.* 611; 87 *Atl. Rep.* 140; *Middlesex Water Co.* v. *Knappmann Whiting Co.,* 64 *N. J. L.* 240 (at *p.* 251); 45 *Atl. Rep.* 692; *Hall* v. *Passaic Water Co.,* 83 *N. J. L.* 771; 85 *Atl. Rep.* 349; *Buchanan & Smock Lumber Co.* v. *East Jersey Coast Water Co.,* 71 *N. J. L.* 350; 59 *Atl. Rep.* 31; *Nieuhaus Bros. Co.* v. *Contra Costa Water Co.,* 159 *Cal.* 305; 113 *Pac. Rep.* 375.

Inasmuch as the first count of the complaint does not allege any express contract whereby the defendant was obligated to supply the plaintiff with water, in any quantity or at any pressure to extinguish fires, it is insufficient to support the first theory upon which it is attempted to be rested.

The second theory advanced in support of this action is that the defendant breached a common law duty alleged to arise from the circumstance that the defendant permitted the plaintiff to connect its fire hydrants with the defendant's water system, through which the defendant undertook to supply the plaintiff with water and, therefore, defendant is liable for negligently failing in such supply, if it resulted in fire loss to the plaintiff.

Keeping in mind, as suggested by the authorities above referred to, that the primary business of a water company

is to furnish water as a commodity and not to extinguish fires, further remembering that the complaint does not allege any mutuality of obligation between the plaintiff and the defendant, leaving the presumption that the water service was gratuitous, it would appear plain that it was never contemplated, from the above circumstances alone, that the defendant undertook to assume liability for failure to furnish water to extinguish fires. It may very well be that the object of connecting the plaintiff's pipe lines with the defendant's water system was for the purpose of enabling the plaintiff to obtain a supply of water to combat fire on its premises, but, as we have seen, the obligation of the defendant would merely be to supply water as a commodity, in the absence of an express contractual obligation to furnish it for fire extinguishing purposes.

The legal principle involved was admirably stated by the late Chancellor Walker in the case of *Baum* v. *Somerville Water Co., supra,* where a water company had connected its mains with the pipe lines of a consumer leading to the latter's fire hydrants and private standpipe. The chancellor, in the course of opinion, said:

"The case in hand, then, narrows itself to the question of duty or no duty owed by the defendant to the plaintiff at the time of the fire. As we have already seen, if there had been a contract between the parties, as in Middlesex Water Co. v. Knappmann-Whiting Co., there would doubtless have been liability on the part of the defendant company, and that even though an inadequate supply of water at the fire was the result of some accidental cause at the time unknown to the water company, upon the principle that where damages under such circumstances result, the one of two persons who must bear the loss shall be he who agreed to sustain it. But in the absence of contract no liability exists on the part of the defendant for the benefit of the plaintiff. The common law does not impose such a liability and we have not been appointed to any statute which creates it. In the absence of contract it does not exist."

In the case of *Middlesex Water Co.* v. *Knappman-Whiting Co., supra,* the contract involved required the water company

"to furnish water with pressure sufficient for fire purposes," and, the company having thus obligated itself, it was held liable for failure to perform the obligation which it thus expressly assumed, even though the failure was due to an unforseen accident.

Certainly the common law would impose no duty upon a water company which would not arise by implication from the ordinary contract to supply a consumer with water as a commodity. The plaintiff's second theory cannot, therefore, be sustained under the pleading as framed.

Turning now to the plaintiff's third theory, which is that the defendant failed to supply plaintiff with water in quantity and under pressure sufficient to make such service safe, proper and adequate, and thereby breached a statutory duty arising under the "Public Utility act," above referred to, and certain orders of the public utility commission made pursuant to the authority contained in said act.

Particular reference is made to the following prohibition contained in the aforesaid act:

"Nor shall any public utility as herein defined provide or maintain any service that is unsafe, improper or inadequate." 2 *Cum. Supp. Comp. Stat., p.* 2886, § 167-24 (C).

While failure to obey this provision, as well as others is made a misdemeanor by the act, no right of action is given therein to an individual who may have been damaged by such failure. Similar provisions in the statutes of other states have been construed by their courts, which have unanimously held that such provisions are only declaratory of the common law and do not enlarge the zone of liability of such utilities, unless a right of action is expressly given by the statute to individual customers. *Jenice De Pauw Memorial Methodist Episcopal Church* v. *New Albany Water Works,* 193 *Ind.* 368; 140 *N. E. Rep.* 540; 27 *A. L. R.* 1274; *Krom* v. *Antigo Gas Co.,* 154 *Wis.* 538; 140 *N. W. Rep.* 163; *H. R. Moch Co.* v. *Rensselaer Water Co.,* 247 *N. Y.* 160; 159 *N. E. Rep.* 896; 62 *A. L. R.* (*Anno.*) 1199; *Larimore* v. *Indianapolis Water Co.,* 197 *Ind.* 457; 451 *N. E. Rep.* 333; *Atkinson* v. *New Castle Water Works Co.* (*L. R.*), 2 *Exh. Div.* (*Eng.*) 441; *House* v. *Housem Water Works Co.,* 22 *S. W.*

*Rep.* 277; *affirmed,* 88 *Tex.* 233; 28 *L. R. A.* 532; 318 *W. Rep.* 179; *Eaton* v. *Fairbury Water Works Co.,* 37 *Neb.* 546; 21 *L. R. A.* 653; 56 *N. W. Rep.* 201; *Britton* v. *Green Bay Water Co.,* 81 *Wis.* 48; 51 *N. W. Rep.* 84. See, also, 27 *A. L. R.* 1280.

Our "Public Utility act" further provides that: "The board shall have power, after hearing, upon notice, by order in writing, to require every public utility as herein defined, * * * to furnish safe, adequate and proper service and to keep and maintain its property and equipment in such condition as to enable it to do so." 2 *Cum. Supp. Comp. Stat.,* p. 2886, § 167-17 (b).

What has already been said regarding the first provision of the statute above mentioned is equally applicable to any order made by the board under this provision. In the absence of a statutory mandate imposing liability upon the utility company in behalf of an individual consumer who has been damaged by a failure to comply with any such order, the order itself could impose no such liability. As already stated, our statute imposes no such liability and as enunciated in the decisions last cited above, it will be presumed that the legislature does not intend by statute to make any change in the common law beyond what it declares either in express terms or by unmistakeable implication.

Furthermore, much of what has been said in disposing of plaintiff's first and second theories, is also applicable here, for it was never intended to impose such enormous liability upon a water company by mere implication. In the absence of an express contract to furnish water in sufficient quantity and under sufficient pressure to extinguish fires, or any express statutory enactment imposing such liability, it does not exist. *Baum* v. *Somerville Water Co., supra.*

The conclusion reached is that the first count of the complaint is not sufficient in law and must be stricken out, and inasmuch as the second and third counts have been abandoned, the entire complaint must fall, and an order may be presented striking it out, but the plaintiff will be allowed twenty (20) days from November 10th, 1932, in which to file an amended complaint if it desires so to do.