250 N.J. Super. 524 (1991)
595 A.2d 557
CATHERINE N. BONGO, PLAINTIFF,
v.
NEW JERSEY BELL TELEPHONE COMPANY AND ORHAN KOSKAR, DEFENDANTS.
Superior Court of New Jersey, Law Division Passaic County, Special Civil Part.
July 18, 1991.
*525 Robert P. Clark, for Plaintiff Catherine N. Bongo.
Florence Amato Scrivo, for Defendants New Jersey Bell Telephone Company and Orhan Koskar, (Evans, Hand, Allabough & Amoresano, Attorneys).
MARMO, J.S.C.
The issue raised here deals with the scope of a judicially-created immunity from civil liability. The applicability of that immunity to the context of this matter has not been addressed in any reported decision by the courts of New Jersey although separate law division courts orally have decided the identical issue differently.
In Weinberg v. Dinger, 106 N.J. 469, 524 A.2d 366 (1987), the Supreme Court concluded an extensive examination of the immunity held by certain privately-owned, publicly-regulated companies, i.e. public utilities. These public utilities had come to this immunity essentially as a result of the holding *526 (discussed hereafter) in Baum v. Somerville Water Company 84 N.J.L. 611, 87 A. 140 (1913). In Weinberg, the Supreme Court abolished the long-standing immunity from civil liability held by these public utilities. However, there was one exception to the abolition. One area of immunity was preserved. The Supreme Court recognized an immunity for the utility from lawsuits based on certain subrogation claims.
The Weinberg Court determined that it was necessary to preserve this area of immunity to the water-company utility involved in that case in order to protect the utility consumer from ultimately absorbing the additional cost if litigation were allowed. The scenario contemplated by the Supreme Court which would cause this to occur would lead, in effect, to the consumer paying twice. This would happen in this way: First: the consumer would pay his insurance carrier the cost to protect his property from fire damage. Should the consumer's property be damaged by fire as a result of an insufficient water supply to extinguish the blaze, the carrier would recover its payment to the consumer through a subrogation action against the water-company utility for its failure to provide an adequate supply of water. The utility payment of the subrogation claim to the carrier would be passed on to the consumer in the form of a rate increase thereby constituting a second cost to the consumer. [106 N.J. at 492, 524 A.2d 366].
Weinberg reached the judgment that it was preferable to have the insurance carrier bear the cost of the fire damage resulting from insufficient water supply rather than to permit the carrier the right to recover its loss from the water-company utility. The carrier is in the business of insuring against such a loss and since public utilities pass all their costs on to the consumer in the form of rate increases, the only way to prevent the consumer from bearing the additional cost of the fire loss was to immunize the utility. Id. 106 N.J. at 489-492, 524 A.2d 366.
*527 The instant matter does not involve a water-company utility or fire damage. It concerns a communications utility and a motor vehicle accident.
On January 26, 1989, the defendant, Orhan Koskar, was an employee of the defendant, New Jersey Bell Telephone Company (hereafter referred to as N.J. Bell), and was operating a vehicle owned by N.J. Bell. This vehicle collided with the rear of a vehicle operated by the plaintiff, Catherine N. Bongo. The plaintiff's insurer, Allstate Insurance Company, brought this subrogation suit against New Jersey Bell to recover the cost of its payment for property damage to the Bongo vehicle.
The defendant, N.J. Bell, now moves for an order of summary judgment dismissing the complaint on the grounds that Weinberg v. Dinger precluded subrogation claims against it. N.J. Bell is a privately-owned, publicly-regulated company operating as a public utility and regulated by the Board of Public Utilities. N.J. Bell has submitted certified proofs attesting to the fact that payment of damages to third parties are considered appropriate rate making costs by the Board of Public Utilities and that such expenditures are recovered dollar for dollar in approved rate increases to N.J. Bell customers. N.J. Bell maintains that the philosophy and/or holding of Weinberg immunizes it from this lawsuit. It contends that like the water company in Weinberg it is a public utility and is immune from subrogation claims. N.J. Bell argues that, as Weinberg directs, the cost should be borne by the carrier in order to preclude the consequence of the customer paying twice  first for motor vehicle insurance and second for increased utility rates.
N.J. Bell has submitted the record of two orally-rendered, law-division opinions addressing this exact issue and deciding it in favor of N.J. Bell. The plaintiff, similarly, has submitted proof that in another case a trial court ruled from the bench against N.J. Bell on this same question. These references are presented not as authority but to show that litigation of identical matters-in-dispute has produced contradictory results under *528 the current state of the law. Indeed, in each of the cases submitted by N.J. Bell, the Judge concluded his decision with the hope that the question would be addressed at the appellate level.
The plaintiff responds to the defendant's motion for summary judgment with a cross-motion for an order striking the defense of immunity which is asserted as a separate defense by the defendant N.J. Bell. The plaintiff maintains that there is no basis in the law for the immunity claimed by N.J. Bell.
I have concluded that Weinberg v. Dinger does not authorize immunization of N.J. Bell from subrogation claims arising out of motor vehicle accidents.
N.J. Bell bases its claim of immunity on the authority of Weinberg v. Dinger. The history of immunity studied by the Supreme Court in Weinberg does not support the position taken by N.J. Bell.
Baum v. Somerville Water Company, 84 N.J.L. 611, 87 A. 140 (1913) is considered the source of the judicially-created immunity scrutinized by Weinberg. In Baum the plaintiff was the owner of a warehouse in Somerville that was destroyed by fire. The defendant company was incorporated for the purpose of supplying water to the town of Somerville. At the time of the fire, the fire department attached hose to the stand pipe and hydrants but was unable thereby to attack the fire because the stream lacked sufficient pressure to reach the blaze.
No contract existed between the plaintiff property owner and the water company. Rather, the contract that existed was between the town of Somerville and the defendant water company whereby the water company agreed to supply water for public use.
Baum made no mention of "immunity", but held that the public water company was not liable to an individual for a loss sustained by fire resulting from an insufficient supply of water to extinguish the fire. No such liability existed in the common law, according to Baum, 84 N.J.L. at 613, 87 A. 140, and since *529 no statute existed imposing a duty on the water company to supply individual property owners with water sufficient for fire fighting, the only way the water company could be held liable to the individual would be if the water company had contracted specifically with the individual property owner to provide water sufficient to extinguish a fire.
The case law referred to in Baum in support of its holding refers, in every instance, to a water company and the water company's role of supplying water. See Knappman-Whiting Co. v. Middlesex Water Co., 35 Vroom 240, 64 N.J.L. 240, 45 A. 692 (1900); Hall v. Passaic Water Co., 54 Vroom 771, 83 N.J.L. 771, 85 A. 349 (1912); Olmstead v. Proprietor of Morris Aqueduct, 18 Vroom 311; Long Branch Commission v. Tintern Manor Water Co., 4 Rolb. 71, 70 N.J. Eq. 71, 62 A. 474 (1905). No context beyond this is addressed or implied in the opinion or in the authorities recited therein.
Thirty-nine years later, the holding of Baum v. Somerville Water Company was re-examined by the Supreme Court in Reimann v. Monmouth Consolidated Water Co., 9 N.J. 134, 87 A.2d 325 (1952). This case also involved a suit by an individual property owner against a water company for fire damage to the individual's premises allegedly incurred because of a lack of water and pressure at fire hydrants served by the defendant water company.
Reimann, somewhat reluctantly it seems to me, reaffirmed the holding of Baum v. Somerville.
There was no contract [between the parties] therefore no duty imposed by contract. There is no applicable statute and therefore no statutory duty. Plaintiff argues for a common law duty but the Court of Errors and Appeals held in Baum v. Somerville Water Company, 84 N.J.L. 611 [87 A. 140] (1913), upon facts that bear a striking resemblance to the facts of the present case, that the common law does not impose a duty upon a company serving a municipality with water to provide a sufficient supply of water at sufficient pressure at fire hydrants to extinguish a fire which is destroying an individual's property. Very plainly, it holds that in the absence of contract, no liability exists. Id., 9 N.J. at 137-138, 87 A.2d 325.
*530 The plaintiff urged the Reimann Court to vitiate the Baum decision and recognize that water companies owe a duty to the consumer to supply water to hydrants at sufficient pressure to extinguish fires. The Court declined this appeal for fear that overturning such a long-standing rule of law could subject water-company utilities to broad liabilities of incalculable limits and the prospect of financial catastrophy. Id. 9 N.J. at 139-140, 87 A.2d 325. Reimann concluded "that if our law is to be overturned, the result should be effected by the Legislature, vested with the law-making power". Id. at 140, 87 A.2d 325.
Reimann perpetuated the holding of Baum, supra, and like Baum made no mention of the term "immunity". However, Reimann did give some expression to what clearly was the real motivation for the Court's decision. While the Reimann holding is presented in terms of contract law and common-law duty there is little doubt but that the Court was motivated mostly by economic necessity.
Only strained reasoning can produce the conclusion that a water company owes no duty to property owners to use reasonable care to provide water to hydrants in sufficient amount to serve the very purpose for the hydrants placement, i.e. fire fighting. However, water companies provide a most essential service to the community. There is little as vital to the human experience as the provision for water. If water companies were not shielded from litigation like that involved in Baum and Reimann this vital service would be in jeopardy since a substantial fire might very well subject a water company to such enormous liability that it would bankrupt the water utility. Reimann, supra, 9 N.J. at 139, 87 A.2d 325. Consequently, the water company was insulated from such unbounded liability. When these rulings (Baum & Reimann) again came under review in Weinberg, the Supreme Court had no difficulty recognizing a duty owed by the water company to private property owners.
*531 Reimann's re-examination and confirmation of Baum is confined to the same context presented in Baum. The case law relied on in the Reimann holding exclusively addresses the same factual context. See, Atlas Finishing Co. v. Hackensack Water Co., 10 N.J. Misc. 1197, 163 A. 20 (Sup.Ct.Circ. 1932). There is no basis to suggest that the Reimann Court addressed or envisioned any shield from liability beyond the limited setting of a lawsuit by a private property owner against a water company for failure to use reasonable care to provide sufficient water for fire fighting.
Thereafter, the Reimann holding was followed by the Supreme Court on several occasions. Sydney Grossman Hotel Corp. v. Lakewood Water Co., 27 N.J. 91, 141 A.2d 541 (1958); Brooks v. City of Orange, 61 N.J. 576, 297 A.2d 1 (1972) and J.H.M. Realty Corp. v. Town of Belleville, 61 N.J. 577, 297 A.2d 2 (1972).
The Baum rule lasted for seventy-four years. It finally was overturned by the Supreme Court in Weinberg v. Dinger which essentially accepted the views expressed by Reimann dissenter, Chief Justice Vanderbilt. Weinberg acknowledged that Baum "made the first authoritative pronouncement of common-law tort immunity for New Jersey water companies." [106 N.J. at 474, 524 A.2d 366].
Weinberg, too, involved a suit brought by a property owner against a water-company utility for negligently failing to maintain adequate water pressure at fire hydrants to extinguish a fire. The water company was granted a summary judgment in the trial court and the Appellate Division affirmed on the basis of Reimann. Weinberg held that "private water companies are no longer immune from such liability [`for their negligence in failing to provide to fire hydrants water pressure of sufficient force to extinguish a fire'] except with respect to subrogation claims asserted by fire-insurance companies". Id. at 472, 524 A.2d 366. As previously discussed (p. 526 & 527, 595 A.2d at 558 & 559 infra), the Supreme Court maintained the water company immunity in subrogation actions in order to protect *532 the consumer from ultimately shouldering the costs of paying for both fire insurance and increased utility rates. Id. at 492, 524 A.2d 366.
While, in the instant matter, N.J. Bell arguably may claim that the consequence of the utility customer paying twice may occur if subrogation claims like this are permitted against the utility, there is nothing in the Weinberg decision to even remotely suggest that any immunity from subrogation claims was preserved other than that allowed a water company in response to a charge of negligent failure to supply sufficient water for fire fighting. The Weinberg opinion cites many of the cases referred to in Baum and Reimann. In its discussion of the subject of immunity there is no reference to any case addressing a factual context beyond that involving a water company and water supply.
The history of the immunity addressed by the Weinberg Court strictly defines the dimensions of this immunity. From its inception in Baum to its last analysis in Weinberg, this immunity can be found in the law only in the context of a water company utility and its obligation to supply sufficient water for fire fighting.
Weinberg did not create a new immunity pertaining to subrogation claims. Rather, the Weinberg opinion carved out for preservation a portion of an existing immunity. It was that part of this long-standing immunity which the Supreme Court in Weinberg felt constrained to perpetuate for public policy reasons. It maintained the existing immunity only as it pertained to certain subrogation suits. There is no authority to suggest that water-company utilities ever were immune from civil liability for the consequences of their negligent operation of water company vehicles. Since Weinberg, water companies have not been immune from subrogation actions in motor vehicle cases. If Weinberg created no new immunity but rather preserved a piece of what had long been there, then in order for the position taken by N.J. Bell to be valid, it must *533 follow that, from the time of Baum, N.J. Bell has been immune from civil liability arising out of motor vehicle accidents. This, of course, is not the case. No such immunity for N.J. Bell or, any other utility, was permitted by the law prior to Weinberg.
N.J. Bell's response is to argue that even though the holding of Weinberg and the history of the case law of the judicially-created immunity which Weinberg re-examined confined that immunity to the specific context of a water-company utility and the supply of water, nevertheless, the rationale for Weinberg's recognition of immunity from subrogation claims should apply to N.J. Bell in the context of this matter. N.J. Bell maintains that the same strong, public-policy considerations which motivated Weinberg apply equally to this matter. It is preferable, N.J. Bell argues, that the motor vehicle insurance carrier bear the cost rather than to have the consumer charged twice.
I resist the suggestion that the rationale of Weinberg should be applied to the context of this matter. Immunity is a concept not favored in the law. Merenoff v. Merenoff, 76 N.J. 535, 547, 388 A.2d 951 (1978); Prosser, Law of Torts, 970 (4th ed. 1971). Immunity is offensive to the bedrock proposition of justice that responsibility be assigned to fault. Recognition of the immunity sought by N.J. Bell would have broad impact. This utility, in particular, operates a great many motor vehicles on New Jersey roads. A great deal of the litigation arising out of motor vehicle accidents involve subrogation claims. Shielding N.J. Bell from civil liability for property damage, personal injury and even loss of human life caused by its negligent operation of its motor vehicles, in what obviously would involve such broad application, is "unthinkable". See C.J. Vanderbilt. dissent, [9 N.J. at 149, 87 A.2d 325.] The failure to attach accountability to the wrongdoer under these circumstances would detract from the public perception of the justice system. Indeed, it reasonably might be expected to spawn some irresponsibility on the part of N.J. Bell drivers.
*534 The trend of the law in New Jersey is toward the disapproval of immunity. Weinberg, supra; Foldi v. Jeffries, 93 N.J. 533, 461 A.2d 1145 (1983) (parental immunity); Merenoff, supra, (interspousal immunity); Willis v. Dept. of Conservation and Economic Div., 55 N.J. 534, 264 A.2d 34 (1970) (sovereign immunity); Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29, 141 A.2d 276 (1958) (charitable immunity).
The Weinberg Court contemplated no extension of its rationale to other settings. It expressly limited its decision to the factual pattern of the case before it:
Our holding today is limited to the category of negligent conduct alleged in the complaint, such as "failing to adequately, properly and safely inspect, maintain and repair said water system" and "failing to replace outmoded and inadequate fire hydrants, fire mains, water lines and other appurtenant equipment." [106 N.J. at 493, 524 A.2d 366 (footnote # 6)].
Furthermore, even with regard to the limited area of immunity which Weinberg permitted, the Supreme Court extended an explicit invitation for reconsideration:
This determination is made without prejudice to the right of a subrogation claimant, either in this or other litigation, to offer proof tending to demonstrate that any increase in water rates, resulting from liability for subrogation claims would be substantially offset by reductions in fire-insurance premiums.... If that correlation were to be proven in subsequent litigation, we would be prepared to reconsider our denial of the carrier's right to subrogation against a water company. Id. at 493, 524 A.2d 366.
These statements from the Weinberg opinion militate against the application of its rationale to the present context.
N.J. Bell submitted proofs in the form of certifications from certain representatives of the utility stating that the cost to the utility of a subrogation claim from a motor vehicle accident would be covered by being computed into the rate charge requested by the utility. N.J. Bell certifies that the Board of Public Utilities, which scrutinizes its rate requests, customarily allows payments to third parties as an appropriate rate setting charge.
I cannot conclude from these proofs that the rejection of the utility's immunity claim would impose additional costs on the consumer. N.J. Bell maintains its own motor vehicle insurance *535 protection. Obviously, its vehicles could not be operating on New Jersey roads without such insurance coverage. N.J.S.A. 39:6A-3. The utility states that it employs a program of self insurance. However, no proofs have been submitted to somehow suggest that the cost of N.J. Bell's motor vehicle insurance, whether through a program of self insurance or from an outside carrier, has been deflated because of New Jersey Bell's immunity from motor vehicle subrogation claims. As previously indicated the utility has identified no legal authority to support the position that it ever enjoyed such immunity. Clearly, the confirmation a long-standing state of affairs cannot be seen to produce new costs.
In any event, a trial court is not the appropriate forum to resolve the complex matter of what rate increase will occur and on whose doorstep the bill will lie. These matters ordinarily are the work of the Legislature and the product of extensive hearings, permitting testimony and proofs from a variety of sources.
For the purpose of this decision, I have accepted as facts N.J. Bell's submissions to the extent they show that as a public utility, N.J. Bell recovers its costs of doing business through rate charges to its customers and that the payment of motor vehicle subrogation claims is a cost factored into those charges. I conclude that the law does not immunize a public utility from motor vehicle subrogation claims, and that the rationale of Weinberg v. Dinger is limited to the specific facts of that case and cannot be applied to this matter.
The motion of the defendant N.J. Bell for an order of summary judgment dismissing the complaint on the authority of Weinberg v. Dinger is denied.
The motion of the plaintiff Catherine N. Bongo to strike the defense of immunity asserted by the defendant N.J. Bell as the seventh defense is granted.