909 A.2d 1141

E & M LIQUORS, INC., M & G FOODS, INC., AND NEW MATTRESS WAREHOUSE, INC., PLAINTIFFS–APPELLANTS, v. PUBLIC SERVICE ELECTRIC & GAS COMPANY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 28, 2006—Decided November 16, 2006.

Before Judges COBURN, COLLESTER and LISA.

*Richard S. Nichols* argued the cause for appellants *(Gennet, Kallmann, Antin & Robinson,* attorneys; *Mr. Nichols,* on the brief).

*Suzanne M. Klar* argued the cause for respondent *(William E. Frese,* attorney; *Mr. Frese,* on the brief).

The opinion of the court was delivered by

COLLESTER, J.A.D.

This is an appeal in a subrogation action from summary judgment granted to Public Service Electric & Gas Company (PSE & G) dismissing the complaint filed by insurance carriers for recovery of fire losses allegedly caused by defendant's negligence.

On appeal from summary judgment we adopt the facts alleged by the party in opposition. *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). On July 20, 2003, a PSE & G primary high voltage electric wire fell from a PSE & G pole to the sidewalk near the south wall of a large commercial building in Clifton where the insureds were tenants. No storm, vehicular impact, act of vandalism or outside force caused the wire to fall. A passerby called the Clifton Fire Department, which in turn notified PSE & G of the downed line. Power to the line was cut by PSE & G approximately fifty minutes later. In the interim, the live wire was "flopping around" on the ground resulting in a deep hole in the sidewalk and contact with the building's metal framework, thereby transmitting large amounts of electricity to ignite the fire which destroyed the building. The insurance carriers paid for property damage and business interruption claims totaling $452,476.59. Pursuant to the assignment of right of subrogation in each policy, this suit was instituted. Following the filing of its answer PSE & G moved for summary judgment, which was granted by the motion judge based on *Weinberg v. Dinger,* 106 *N.J.* 469, 524 *A.*2d 366 (1987). Plaintiffs have appealed.

Before *Weinberg,* there was a long line of cases conferring immunity to private water companies for damages based on failure to supply a sufficient amount of water to extinguish a fire. *See Baum v. Somerville Water Company,* 84 *N.J.L.* 611, 613, 87 *A.* 140 (E & A 1913); *Hall v. Passaic Water Co.,* 83 *N.J.L.* 771, 85 *A.* 349 (E & A 1912); *Long Branch Comm. v. Tintern Manor Water Co.,* 70 *N.J.Eq.* 71, 62 *A.* 474 (Ch.1905); *Knappman Whiting Co. v. Middlesex Water Co.,* 64 *N.J.L.* 240, 45 *A.* 692 (E & A 1900). This doctrine, referred to as the *Baum* rule, was reaffirmed in *Reimann v. Monmouth Consolidated Water Company,* 9 *N.J.* 134, 87 *A.*2d 325 (1952), on public policy grounds; namely, that without this common law immunity, water companies would be exposed to unbounded liability and might jeopardize their viability. *Id.* at 138–40, 87 *A.*2d 325. Chief Justice Vanderbilt forcefully dissented, stating that the immunity was "repugnant not only to fundamental concepts of substantial justice, but to modern principles of tort liability . . ." *Id.* at 140, 87 *A.*2d 325. Nonetheless, the *Baum* rule reaffirmed in *Reimann,* was maintained in *Sydney Grossman Hotel Corp. v. Lakewood Water Co.,* 27 *N.J.* 91, 141 *A.*2d 541 (1958); *Brooks v. City of Orange,* 61 *N.J.* 576, 297 *A.*2d 1 (1972); and *J.H.M. Realty Corp. v. Town of Belleville,* 61 *N.J.* 577, 297 *A.*2d 2 (1972).

*Weinberg,* overruled *Baum* and *Reimann,* eliminating the immunity in suits by individuals and imposing a duty on water companies to act with reasonable care in providing sufficient water to extinguish fires. *Id.* at 495, 524 *A.*2d 366. However, in a significant "carve-out" the Supreme Court upheld the immunity in subrogation actions.

> We believe that the imposition on a water company of liability for subrogation claims of carriers who pay fire losses caused by the company's negligent failure to maintain water pressure would inevitably result in higher water rates paid by the class of consumers that paid for the fire insurance. The result of imposing subrogation-claim liability on water companies in such cases would be to shift the risk from the fire insurance company to the water company, and, ultimately, to the consumer in the form of increased water rates. Thus, the consumer would pay twice—first for property insurance premiums, and then in the form of higher water rates to fund the cost of the water company's liability insurance. We find this result contrary to public policy.

[*Id.* at 492, 524 *A*.2d 366.]

Plaintiffs argue that the *Weinberg* subrogation carve-out is inapplicable because the immunity does not extend to utilities other than water companies and that suit is not based on interruption or insufficiency of service but rather negligence of the utility in causing the damage.

The first contention was negated by the Supreme Court decision in *Franklin Mutual Ins. Co. v. Jersey Cent. Power & Light*, 188 *N.J.* 43, 902 *A*.2d 885 (2006), decided during the pendency of this appeal. There a subrogation action was initiated after the carrier made payment to the insured, a food market, for spoiled food resulting from widespread interruptions of electrical service after Hurricane Floyd struck New Jersey in September 1999. The Supreme Court held that the *Weinberg* subrogation carve-out for losses due to service interruption was not restricted to claims against water companies but extended to all regulated utilities. The Court reasoned:

> That brings us to the question of whether the subrogation carve-out of *Weinberg* should be maintained. We find the carve-out troubling insofar as it insulates utilities from paying for the damages they cause to property owners whose service is negligently interrupted. That is contrary to our tort law, which has always recognized that the burden of loss should fall, as a matter of justice, on the party at fault. *See, e.g., People Express Airlines, Inc. v. Consol. Rail Corp.*, 100 *N.J.* 246, 255, 495 *A*.2d 107 (1985).

> However, we are loathe to interfere with the application of the rule at this juncture for several reasons. First, in the case of a utility that can pass losses on through rate increases, the classic "just desserts" operation of tort law loses some of its currency. At the same time, under the *Weinberg* rule, the innocent victims made whole through insurance or in a direct action against the utility, thus satisfying the compensatory principle underlying our tort law.

> Second, the *Weinberg* rule has now been in effect for almost twenty years. Thus, the concerns of the dissenters in that case to the effect that the Legislature is the proper forum to decide the subrogation carve-out, to some extent, have been mitigated. Indeed, the Legislature is presumed to be aware of *Weinberg* and to have acquiesced in its ruling. *See Taneian v. Meghrigian*, 15 *N.J.* 267, 279, 104 *A*.2d 689 (1954).

> Third, and most important, the necessary prerequisite to an informed re-examination of *Weinberg* is absent: we have not been offered proof tending to demonstrate that any increase in utility rates resulting from liability for subrogation claims would be substantially offset by reductions in insurance premiums. *Weinberg*,

*supra,* 106 *N.J.* at 493, 524 *A.*2d 366.... Thus, we continue to be concerned over the public "paying twice," first through insurance premiums and then through increased utility rates reflecting subrogation losses. Until we are satisfied that the public will not suffer that disadvantage, we decline to alter the subrogation rule of *Weinberg.*

[*Id.* at 47–48, 902 *A.*2d 885.]

However, unlike *Franklin Mutual* and *Weinberg,* the instant case is not grounded on a claim for damages due to service interruption. Here the alleged negligence of PSE & G was the precipitating cause of the fire that destroyed the business premises. We do not read either *Weinberg* or *Franklin Mutual* to immunize a primary tortfeasor from liability in a subrogation action. Notably, other reported cases have drawn the distinction between negligent failure to provide a service and negligence directly causing harm. *See Ebert v. South Jersey Gas Co.,* 260 *N.J.Super.* 104, 615 *A.*2d 294 (Law Div.1992) (in a subrogation action a gas company may be held accountable for property damage from a gas explosion due to its alleged negligent failure to adequately install, inspect or repair a gas line) *rev'd on other grounds,* 307 *N.J.Super.* 127, 704 *A.*2d 579 (App.Div.1998), *aff'd,* 157 *N.J.* 135, 723 *A.*2d 599 (1999); *Bongo v. New Jersey Bell Telephone,* 250 *N.J.Super.* 524, 595 *A.*2d 557 (Law Div.1991) (*Weinberg* carve-out not applicable to immunize public telephone utility from motor vehicle subrogation claim).

■ Immunity from wrongful acts is not favored, *see e.g., Merenoff v. Merenoff,* 76 *N.J.* 535, 547, 388 *A.*2d 951 (1978), and public utilities do not enjoy a general tort immunity. *Weinberg supra,* 106 *N.J.* at 472, 524 *A.*2d 366; *Muise v. GPU, Inc.,* 332 *N.J.Super.* 140, 166, 753 *A.*2d 116 (App.Div.2000); 64 *Am.Jur.*2d "Public Utilities," § 14, p. 456 (2001). We see no basis to extend the limited immunity for subrogation claims against public utilities to claims for damages for negligent actions precipitating property damage claims.

Reversed and remanded for trial.